## GALVESTON, HARRISBURG & SAN ANTONIO RY. CO. v. HALL et al.*
### No. 7003.

Circuit Court of Appeals, Fifth Circuit.
May 3, 1934.

B. W. Teagarden and W. B. Teagarden, both of San Antonio, Tex., for appellant.

Will A. Morriss, T. M. West, Nat L. Hardy, and Frank B. Buchanan, all of San Antonio, Tex., for appellees.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

In a state court in Texas, J. T. Hall, a citizen of that state, sued Galveston, Harrisburg & San Antonio Railway Company, a Texas corporation, herein called the railroad company, as a common carrier, for the negligent killing of seventeen cows, due to their drinking a poisonous cattle-dip mixture while in the company's stock pens. The railroad company, according to Texas practice, brought a so-called cross-action against Uvalde County, Tex., based on a contract between them which authorized the county to use the stock pen for dipping cattle to eradicate ticks, the county agreeing to keep the premises in a sanitary condition and to permit nothing to accumulate which would attract stock or create a nuisance or danger to persons or property by fire or otherwise, including damage to property for which the company might be responsible. Asserting that a breach of this promise caused the death of the cattle, if they were poisoned as Hall claimed, a judgment over against the county was prayed for any recovery that Hall might obtain. The county made answer that the cross-action against it was a misjoinder of parties and causes of action; that there had been no audit of the claim before suit as the law required; and that the contract was not executed by competent authority and did not bind the county. Hall amended his petition and for the first time disclosed that the cattle were shipped in in-

*Petition for rehearing denied June 13, 1934.

terstate commerce under the laws of the United States. The railroad company then and on that ground procured a removal of the case to the District Court of the United States. On the trial, at the conclusion of the evidence, the county moved to dismiss the case as to it, or in the alternative to instruct the jury to find in its favor. The court granted the latter motion, and a separate verdict on the cross-action was entered accordingly. The issues between Hall and the railroad company were submitted to the jury, who rendered a verdict for Hall for $1,900.45, which included the value of the cows at $110 each. The railroad company has appealed, arguing but two contentions: That the jury should have been charged to limit recovery to $50 per cow under the terms of the contract of shipment, and that the liability of the county should have been submitted to the jury.

■■ The judge charged the jury that the contract of shipment contained on the face of it a limitation of recovery in the event of death to $50 per head, and under the Cummins Amendment of the Interstate Commerce Act, § 20 (11), as amended by Act Aug. 9, 1916, 49 USCA § 20 (11), that the limitation was void if the cattle were ordinary live stock, so that their actual value might be recovered; but if they were chiefly valuable for breeding purposes or other special uses, the recovery could not exceed $50 per head. The Cummins Amendment makes the interstate carrier liable for the full actual loss, notwithstanding any limitation of liability or representation or agreement as to value in the shipping contract, or in any rule or regulation, or in any tariff filed with the Interstate Commerce Commission. By way of exception to this general rule the commission is empowered to expressly authorize or require rates "dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released." "Ordinary live-stock" are excepted from the provision for these released rates and remain under the general rule. We find in this contract of shipment, signed by the shipper, neither declaration of value nor agreement about it, nor mention of $50, nor even the fixing of a freight rate; but only a declaration that the "thirty head of cattle, dairy," are "ordinary livestock," under a recited definition in the very words of the statute that "ordinary live-stock" are "all cattle, swine, sheep, goats,

horses, and mules, except such as are chiefly valuable for breeding, racing, show purposes, or other special uses." There is a stipulation between counsel that a tariff regularly authorized by the Interstate Commerce Commission for ordinary live stock limits recovery to $50 per head for cows, but the tariff itself is not in evidence and there is no particular reference to it in the shipping contract. We do not understand how a tariff fixing the rates on ordinary live stock could establish of its own force any limitation of liability to $50 or any other sum, because the statute excepts ordinary live stock from the scheme of released rates and puts them under the rule that renders such limitations unlawful and void, although in a tariff filed with the commission. The tariff could not classify ordinary live stock as embracing only cows worth $50 or less without infringing on the statutory definition. The statute declares that all cows are ordinary live stock irrespective of variety or general value except those individual animals which are chiefly valuable for breeding (racing may be ignored in the case of cows), show purposes, or other special uses. Such exceptional individuals who have peculiar value above others of their variety are to have special tariff treatment, lest there be surprise and fraud upon the carrier. Assuming, however, that there is a limitation to $50 per cow valid under the statute if they were not ordinary cattle, although we do not understand how it arises, we find no error against the railroad in submitting to the jury the questions whether these were ordinary cattle, and, if so, what they were actually worth. All the witnesses say that they were large Holsteins, a well-known variety of cattle characteristically black and white, and weighed from 1,000 to 1,600 pounds each. The plaintiff testified to a value of $125 each, saying: "They were supposed to be tick-free, were dairy cattle, and I was buying them for high-grade breeding purposes and to sell for that purpose." "As to being fancy breeding cattle or ordinary cattle, they were a good class of ordinary dairy cattle. They were not show cattle. There was no special use for which they were valuable—just dairy cattle for milk purposes. They were bought and sold as ordinary dairy cattle, good quality. They were not for special breeding purposes. They were not registered, nor entitled to registry so far as I know." A witness for the railroad company says: "I think Holstein cattle of that kind are of more value than ordinary dairy cattle for breeding purposes. They could have been used for beef cattle. Holsteins are big cattle as contradistinguish-

ed from Jerseys. If fat, they would have been worth $65.00 or $75.00 each as beef cattle." This evidence does not show an extraordinary, unsuspected value in these individual cows. They are not asserted to be worth any more than other Holstein cows of their size and condition. Dairying is not a "special use" for a cow. That they were expected to breed and reproduce their kind does not show a chief value for breeding purposes. While not scrub cattle, they were ordinary cattle within the definition of the statute. They were tendered and accepted for shipment as such, and the freight collected at destination was on that basis. The shipper ought to have recovered their full actual value as ordinary Holstein dairy cows. Hall's judgment is affirmed.

The case of the railroad company against the county ought not to have been tried by the District Court for want of federal jurisdiction. That controversy is not between citizens of different states, it does not arise under the Constitution or laws of the United States, nor by reason of parties or subject-matter come otherwise within the federal judicial power. Only by a sort of dependent jurisdiction arising out of the suit of Hall against the railroad company could it possibly be tried in a federal court. We denied dependent jurisdiction in the District Court of so-called cross-bills between defendants of the same citizenship in which the complainant though a citizen of another state, had no concern, a decision thereof not being required to dispose of a res before the court. Republic National Bank v. Massachusetts Bonding Co. et al. (C. C. A.) 68 F.(2d) 445. The suggestion that when there is removal because of a separable controversy, the whole case is removed does not help, because removal on account of a separable controversy can be had only when the controversy is between citizens of different states. 28 USCA § 71. The two controversies here are wholly distinct in parties and subject-matter. Hall was suing the railroad company, with which alone he had dealings, for negligence. He had no claim against the county, for it is not liable in tort for negligence and he had no contract with it. Although the railroad company claims a valid contract with the county and a right of action over on it if Hall succeeds, Hall's case ought not to be complicated and delayed by mingling with it the trial of the independent issues as to the contract. The usual practice when a third party is liable over is to vouch such party in by notifying him of the suit and inviting him to assist in its defense, thus binding him by the result of its trial so far as it ought to affect his liability, but leaving the trial of his own peculiar case to a separate suit. In Texas, however, where law and equity are blended, the equitable idea obtains of doing full and complete justice in one trial where practicable. Nevertheless, in a situation like this where the causes of action are different and the original plaintiff has no claim against the third party sought to be brought in, and different proof must be made to bind such third party to the original defendant, or where his introduction causes embarrassment, he may not over objection be brought in as a party in Texas. United States Fidelity & Guaranty Co. v. Fossati, 97 Tex. 497, 80 S. W. 74. Where the same evidence will serve to charge both with liability and there is no prejudice to others, joinder is allowed. National Surety Co. v. Atascosa Ice Co. (Tex. Com. App.) 273 S. W. 821. However the question of Texas practice may be resolved, we are of opinion that the controversy with the county was not removable to the federal court. If Hall's original suit had disclosed its removability, the railroad company's procuring from the state court process against the county would have constituted a waiver of the right of removal. When removability was first disclosed by amendment, although the railroad company then had a right to remove, it could be done only by abandoning its impleading of the county in the state court. We are of opinion that after removal, for reasons indicated above, the District Court could not have brought the issues with the county into the case if application had then been made to it. The controversy with Hall, which was removable and was removed, was wholly distinct from that between the railroad company and the county. The character of the former as involving a federal question could not be imparted to the latter. The separate verdict rendered between the railroad company and the county ought to be annulled, together with so much of the judgment as rests upon it, for want of jurisdiction, and the so-called cross-action ought to be dismissed. 28 USCA § 80.

Accordingly the judgment of the District Court is affirmed as to Hall but reversed as to Uvalde county without costs of appeal, with direction to vacate the verdict on the cross-action and to dismiss the cross-action for want of jurisdiction.