Darrel C. NOTTELSON, Plaintiff,

v.

A. O. SMITH CORPORATION, a Foreign Corporation, and Smith Steel Workers Directly Affiliated Local Union 19806, AFL–CIO, Defendants.

No. 75–C–220.

United States District Court, E. D. Wisconsin.

Dec. 20, 1976.

Lee Boothby, Berrien Springs, Mich., for plaintiff.

Sigrid Dynek, Law Dept., A. O. Smith Corp., Milwaukee, Wis., for A. O. Smith Corp.

Kenneth R. Loebel, Goldberg, Previant & Uelmen, S. C., Milwaukee, Wis., for defendant Union.

## MEMORANDUM AND ORDER.

WARREN, District Judge.

The conflict which led to this action began when an employee of A. O. Smith refused, for religious reasons, to pay union dues to the representative of his collective bargaining unit, Smith Steel Workers, as required by the union security agreement between the employer and the union. As a result of the refusal, the union requested A. O. Smith to terminate his employment. To forestall this, Nottelson brings a complaint against the employer and the union for damages and injunctive relief. He alleges three causes of action. The first is based on 42 U.S.C. § 2000e; the second on the First, Fifth, Ninth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1985 and § 1988; and the third is based on the Wisconsin Constitution, Article I, Section 18. The plaintiff asks the Court to grant pendent jurisdiction over the third cause of action. The defendant union has responded with a motion to dismiss the complaint, arguing that Nottelson has failed to meet two procedural requirements for suit, and that his claims are without basis in law.

Plaintiff's original complaint was filed with this Court on April 23, 1975. Although a temporary restraining order was originally granted and extended, a preliminary injunction was denied, and the complaint dismissed without prejudice to reinstatement because of a procedural fault—namely it was submitted without a notice of right to sue from the EEOC. That fault was remedied, and on October 14, 1975, this Court issued an order granting the plaintiff the right to amend his original complaint and vacating the earlier dismissal.

In light of the reasoning of this order, defendants' procedural objections to Nottelson's first cause of action cannot be accepted. The requirement that the state agency deal with the complaint for sixty (60) days, 42 U.S.C. § 2000e–5(c), was met. Even if it had not been, the section clearly allows for early termination. Similarly, the ninety-day statute of limitations, 42 U.S.C. § 2000e–5(f)(1), was tolled when plaintiff filed his motion for reinstatement on July 22, 1975. The problems which kept the plaintiff from filing his amended complaint until October 29, 1975 were not a result of inaction on his part, and because of defendant's involvement with these disputes, adequate notice was provided by the motion. In addition, the order of October 14, 1975 revived the action as commenced in April, 1975.

The merits of these pleadings are the important aspects of this case, and should now be considered.[1]

---

1. In this regard, see *Berg v. Richmond Unified School District*, 9 Cir., 528 F.2d 1208 (1975) ". . . procedural niceties should not be employed to impede a Title VII claimant from obtaining a judicial hearing on the merits."

In essence, defendant union argues that if Nottelson is successful in his suit, the heart of the NLRA, 29 U.S.C. § 158(a)(3), and (b)(2) permitting union security agreements, would be destroyed and with it the delicate balance of power between labor and management that has been fashioned in our country's laws only after decades of violent conflict. Supporting its position, defendant cites cases involving the conflict between the first amendment and the union security provision of the Railway Labor Act such as *Railway Employees' Department v. Hanson,* 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956); *Gray v. Gulf, M. & O. R. R.,* 429 F.2d 1064 (5th Cir. 1970), *cert. denied,* 400 U.S. 1001, 91 S.Ct. 461, 27 L.Ed.2d 451 (1971); and *Otten v. Baltimore & O. R. R.,* 205 F.2d 58 (2d Cir. 1953). Cases involving the NLRA and religious rights, *Hammond v. United Papermakers Union,* 462 F.2d 174 (6th Cir. 1972), *cert. denied,* 409 U.S. 1028, 93 S.Ct. 464, 34 L.Ed.2d 322 (1972), and *Linscott v. Millers Falls Co.,* 440 F.2d 14 (1st Cir. 1972), *cert. denied,* 404 U.S. 872, 92 S.Ct. 77, 30 L.Ed.2d 116 (1972), carried the point further.

## COUNT I

In reference to the first cause of action brought by the plaintiff, however, none of these earlier cases are as compelling as two more recent ones decided after Title VII was amended to include a broad definition of religion and a requirement that the religious beliefs of employees be accommodated. These cases are, *Cooper v. General Dynamics,* 533 F.2d 163 (5th Cir. 1976); and *Yott v. North American Rockwell Corp.,* 501 F.2d 398 (9th Cir. 1974).

The necessity of accommodation is found within the definition of religion, 42 U.S.C. § 2000e(j) added in 1972:

(j) The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

This definition must be read in conjunction with 42 U.S.C. § 2000e–2(a)(1), (2), and (c)(1), (2), and (3) which prohibits employers and unions from discriminating against employees on the basis of religion, and prohibits unions from causing or attempting to cause an employer to discriminate against an employee on the basis of his religion.

Although the appellate opinion in *Cooper* was delivered after the original briefs were presented here, both sides have filed supplemental briefs in light of this case.

The three-judge panel in *Cooper* filed three opinions. All agreed that Title VII places a duty of accommodation on both the employer and the union. What divided them was whether the accommodation should extend to union dues, and whether the hardship exception should apply to the union as well as the employer. Judge Gee and Judge Brown agreed that payment of union dues to a nonreligious charity was a possible accommodation. Judge Brown felt that hardship to the union must be considered in making this accommodation. Judge Rives agreed as to the hardship question, but dissented because he did not think non-payment of dues could ever be a reasonable accommodation.

In order to understand how the result reached in *Cooper* can exist in harmony with the NLRA, one must look further. The key to the problem is the relationship between Title VII and the NLRA. In *Alexander v. Gardner Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Supreme Court ruled unanimously that the Title VII rights of an employee could not be foreclosed by binding arbitration pursuant to a collective bargaining agreement. To reach this conclusion, Justice Powell stated that by its nature, Title VII,

. . . stands on plainly different ground; it concerns not majoritarian process, but an individual's right to equal employment opportunities. Title VII's strictures are absolute and represent a congressional command that each employee be free from discriminatory practices. 415 U.S. at 51, 94 S.Ct. at 1021.

Defendant urges that the complaint be dismissed either because the discharge was based on non-religious grounds, the simple refusal to pay dues, or, if based on religious discrimination, because Title VII's protection cannot shield the employee from the operation of the NLRA. Neither argument is sufficient.

■ First, the discharge of Nottelson is clearly a reaction to his attempt to follow a precept of his religion. It would be sophistry to deny the connection. Second, the plaintiff's Title VII rights cannot be eliminated by the agreement between the union and his employer. Although the union security agreement exists to prevent free-riders, its sanction in the NLRA looks to the two partners in the agreement en masse. When an individual is in conflict with either of the two groups, Title VII is the predominate statute.

If the enforcement of an accommodation under Title VII would cause undue hardship to the union shop created by A. O. Smith and Smith Steel Workers, that is a fact to be demonstrated at trial. But to say that plaintiff has no right to seek an accommodation with respect to his payment of dues, that is to deny the clear import of the act.

■ Therefore, this Court finds that, in accordance with the reasoning of Judges Gee and Brown in *Cooper,* and Justice Powell in *Alexander,* plaintiff's claim under Title VII is not clearly without merit, and therefore that defendants' motion to dismiss as to this count is DENIED.

## COUNT II

■ In his second cause of action, Nottelson charges that the NLRA is unconstitutional as applied to him. He urges that there is no compelling state interest in allowing it to be enforced as to him. *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) and *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1967).

The courts in *Yott, supra,* and *Linscott, supra,* both applied the *Sherbert* balancing test in cases nearly parallel with this one. Both found the plaintiff's claim to be with-

out merit. A distinction can be made between Nottelson's position and that of at least the plaintiff in *Yott,* however. Yott had another job while he was pursuing his action against his former employer. If the allegations of Nottelson in his complaint are taken as fact, which they should be in the stance of this motion, he may be closer to the total indigency that faced the plaintiff in *Sherbert.*

The merit of plaintiff's second claim certainly lacks the force which accompanies his first cause of action. However, since the first count will not be dismissed, the Court feels that neither justice nor fairness will be insulted by continuing the second count, without prejudice to a later motion for dismissal on a fuller presentation of the facts. Therefore, defendant's motion as to Count II is DENIED.

## COUNT III

Finally, plaintiff asks the Court to take jurisdiction over a cause of action for the same conduct, based on the Wisconsin Constitution, Article I, Section 18:

> The right of every man to worship Almighty God according to the dictates of his own conscience shall never be infringed . . . nor shall any control of, or interference with, the rights of conscience be permitted . . .

■ A district court has considerable discretion over those actions to which it will give pendent jurisdiction. See, for example, *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In this case, although it might be more economical to hear the third cause of action in federal court with the other two, general principles of comity and discretion, especially in light of the ambiguity of Wisconsin State law on the subject and as presented in the briefs, lead this Court to find that a state court would be the more appropriate forum for its resolution. Therefore, defendant's motion to dismiss, as to count three of plaintiff's complaint, is GRANTED.