## UNIVERSAL MARINE INSURANCE COMPANY, LTD., Plaintiff,

v.

## BEACON INSURANCE COMPANY, Neill Portermain, New Orleans Reinsurers, Inc., Robert C. Schirmer, B.F.G. Toomey & Associates, Inc., B.F.G. Toomey Associates, Ltd., Barry Toomey and Cherokee Insurance Company, Ltd., Defendants.

### No. ST–C–83–328–P.

United States District Court, W.D. North Carolina, Statesville Division.

Aug. 28, 1984.

Bruce Friedman, Kroll, Pomerantz & Cameron, New York City, Hugh Campbell, Weinstein, Sturges, Odom, Groves, Bigger, Jonas & Campbell, E. Fitzgerald Parnell, III, Charlotte, N.C., for plaintiff.

Gaston H. Gage, Parker, Poe, Thompson, Bernstein, Gage & Preston, Charlotte, N.C., for additional parties defendant, Frederick B. Ingram and Ingram Corp.

Katherine D. Woodruff, Condos, Shafer, Paynor, Ramsey, Beggs & Woodruff, Dallas, Tex., Ronald A. Jacks, Paul W. Schroeder, David M. Spector, Edward R. Gower, Isham, Lincoln & Beale, Chicago, Ill., James E. Walker, Walker, Palmer & Miller, Charlotte, N.C., for Beacon Ins. Co. and Neil Portermain.

Raymond E. Owens, Jr., Charlotte, N.C., for New Orleans Reinsurers and Robert Schirmer.

John DeQ Briggs, W. Donald Dresser, Howrey & Simon, Washington, D.C., Charles H. Warfield, Thomas P. Kanady, Jr., Rachel L. Steele, Farris, Warfield & Kanaday, Nashville, Tenn., Robert B. Cordle, E. Osborne Ayscue, Helms, Mulliss & Johnston, Charlotte, N.C., Harold M. Tract, Rein, Mound & Cotton, New York City, for Cherokee Ins. Co., Ltd.

## ORDER

ROBERT D. POTTER, Chief Judge.

**THIS MATTER** was heard before the undersigned on August 15, 1984 in Charlotte, North Carolina. The Plaintiff ("UMIC") was represented by E. Fitzgerald Parnell, III and Bruce M. Friedman. Beacon Insurance Company ("Beacon") was represented by Lane Wharton, Ronald A. Jacks and David M. Spector. Cherokee Insurance Company ("Cherokee") was represented by Robert B. Cordle, Robert Pryor, Rachel L. Steele and Thomas P. Kanaday. Dana Corporation ("Dana") was represented by W. Donald Dresser and John DeQ Briggs, III. Bercanus Insurance Company ("Bercanus") was represented by James E. Walker. New Orleans Reinsurers, Inc. ("Nola Re") was represented by Raymond E. Owens. The hearing was held on motions of Beacon for a preliminary injunction and for a constructive trust, on motion of Cherokee to stay all claims against Cherokee and on motions of the Plaintiff for a stay and for reconsideration. During the hearing Beacon moved to strike the affidavit of W. Donald Dresser, Cherokee moved to stay this Order and to certify this Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and Bercanus requested a stay of its obligation to file an Answer. Each motion will be discussed seriatum.

### I. MOTION TO STRIKE THE AFFIDAVIT OF W. DONALD DRESSER

Beacon moves the Court to strike Mr. Dresser's affidavit on the grounds that the affidavit is rank with hearsay and violates EC 7–24 of the North Carolina Code of Professional Responsibility by expressing an attorney's personal opinion. The Court, however, after considering the matter is of the opinion that Beacon's motion to strike should be denied in that the information is not offered to prove the truth of the matter asserted. Fed.R.Evid. 801.

Beacon and UMIC have suggested by inuendo that Cherokee masked its knowledge of its pending insolvency or delayed arbitration proceedings because it knew re-

habilitation was imminent. Mr. Dresser's affidavit is offered only to refute the above suggestions by explaining how and when Cherokee decided to file for rehabilitation. Since the affidavit is therefore not offered to prove the truth of the matter asserted, *i.e.*, it is not offered to prove the truth of the facts reported by Ormond Re to Cherokee, the Court is of the opinion that Beacon's motion to strike the affidavit should be denied.

## II. BEACON'S MOTION FOR A PRELIMINARY INJUNCTION

■ Beacon moves the Court to enjoin Cherokee from allowing to be maintained an order or from seeking an order in any other forum that would in any way interfere with the Order of May 4, 1984, 588 F.Supp. 735, compelling arbitration and the Order of March 2, 1984, 581 F.Supp. 1131, directing that the disputed funds be held in the registry of the Court. Beacon is entitled to a preliminary injunction against Cherokee if Beacon establishes that it is likely to prevail on the merits, that it will be irreparably harmed if the interim relief is denied, that the harm to Beacon outweighs the injury to Cherokee if the injunction is granted and granting the injunction must not disserve the public interests. *Wetzel v. Edwards*, 635 F.2d 283, 287 (4th Cir.1980).

As the temporary restraining Order of August 6, 1984, 592 F.Supp. 945, discloses the facts leading to Beacon's requested motion, sufficiently discusses Beacon's likelihood of success in attacking the validity of the Tennessee orders and sets forth the irreparable harm to Beacon if an injunction is not issued, the Court will not belabor the issues and instead simply reaffirms the matters set forth in the temporary restraining Order.

The only issues remaining to be determined are whether a preliminary injunction would disserve the public interest and whether the balance of the equities lies in Cherokee's favor. The Court finds that both issues must be answered negatively.

The interest of the public in preventing Cherokee from collaterally attacking an order of this Court is de minimus. Similarly, the harm to Cherokee in being enjoined from seeking collateral orders which impermissibly attempt to interfere with matters before this Court is negligible compared to the harm to Beacon in being subject to contempt for proceeding with orders of this Court. Since Beacon has satisfied its burden with respect to the four prerequisites for issuing a preliminary injunction the Court is of the opinion that Beacon's motion should be granted.

## III. CHEROKEE'S MOTION FOR A STAY OF ALL CLAIMS AGAINST CHEROKEE IN THIS LITIGATION

On July 17, 1984 Cherokee was placed into receivership pursuant to the insurance rehabilitation laws of Tennessee. At the time Cherokee filed for rehabilitation, UMIC was already under the supervision of the Bermuda insurance authorities and Beacon was already placed in rehabilitation pursuant to the insurance rehabilitation laws of North Carolina. Although Beacon and UMIC had been in rehabilitation during a substantial portion of this litigation and subject to various orders of this Court, none of the litigants, including Cherokee, had suggested that the Court was required to stay all claims against Beacon and UMIC pending conclusion of the North Carolina or Bermuda rehabilitation proceeding. After Cherokee suffered a similar fate, however, Cherokee asserted that as a matter of law the Court was required to stay all proceedings against Cherokee pending resolution of the Tennessee rehabilitation proceeding.[1] Accordingly, Cherokee filed the instant motion to stay contending that pursuant to the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*, the Uniform Insurers Liquidation Act, N.C.G.S. § 58–155.10 *et seq.*, and the doctrine of abstention, the mere presence of state court receivership proceedings mandates a federal court to abstain in the exercise of its jurisdiction.

1. Beacon suggested that the rehabilitation pro- ceeding could easily last five to ten years.

■ Only exceptional circumstances justify abstention from the exercise of federal jurisdiction in deference to state litigation. As the Supreme Court has repeatedly stated

"Abstention from the exercise of federal jurisdiction is the exception, not the rule. 'The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.'" *Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 956, 74 L.Ed.2d 765 (1983), quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

Accordingly, the task before the Court is not to find a substantial reason for the exercise of jurisdiction, rather the Court must ascertain whether this litigation is the exception justifying surrender of jurisdiction. 103 S.Ct. at 942.

■ Cherokee argues that the presence of Tennessee rehabilitation proceeding, the McCarran-Ferguson Act and the Uniform Insurers Liquidation Act require the Court to recognize this case as the exception justifying abstention. In support of this proposition, Cherokee relies heavily on *Levy v. Lewis*, 635 F.2d 960 (2d Cir. 1980). Although the Court found the erudite opinion of Judge Lumbard in *Levy* extremely informative it must be remembered that there is not any mechanical checklist to employ in deciding whether a case is the exception. The appropriateness of abstention in *Levy* does not necessarily mandate the appropriateness of abstention in the instant case. Rather the determination rests "on a careful balancing of the important factors as they *apply in a given case*, with the balance heavily weighted in

favor of the exercise of jurisdiction." 103 S.Ct. at 937 (emphasis supplied).

In *Levy* the state insurance rehabilitator terminated the benefits of a retired employee in a state liquidation proceeding. The retired employee then filed suit in federal court alleging that the termination of the employee welfare benefits violated ERISA. Holding that the case falls squarely within the exceptional circumstances test of abstention in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) the federal court refrained from exercising concurrent jurisdiction over the ERISA claim. 635 F.2d at 965. The Court, however, refused to abstain on the claim of breach of fiduciary duty under ERISA because that was a claim which carries with it exclusive and not concurrent federal jurisdiction. 635 F.2d at 967.

In applying the exceptional circumstances test of *Colorado River* to the facts the Court found abstention would prevent duplicative litigation, would enable consolidation of all claims, would avoid delay and piecemeal adjudication of the claims, and would promote the federal policy of allowing states to regulate insurance matters. The facts in this case, however, are significantly distinct, resulting in the opposite conclusion. Here the Court is confronted with not one, but instead three defunct insurers and thus three separate concurrent rehabilitation proceedings. Furthermore, the federal litigation had substantially progressed prior to the institution of the Tennessee rehabilitation proceeding and Cherokee has asserted substantial claims in this litigation *against* the other litigants. This is not simply a case of a disgruntled claimant attacking the manner in which the insurance rehabilitator administered the rehabilitation of an impaired insurance company. No challenge is made in this case which implicates the regulatory responsibilities of Tennessee or North Carolina. This action is to establish the validity, if any, of the multiple litigants' claims with respect to the various reinsurance treaties. The litigation does not interfere with a state's

custody or control of the assets of an insolvent insurer. If a party is eventually successful in this litigation and establishes the validity of its claim against Cherokee, it may take the judgment to the Tennessee rehabilitator who will determine the priority of the claim under the state rehabilitation laws as against other claimants. This case is also factually distinct from *Levy* in that Cherokee and Beacon contracted to arbitrate and are therefore subject to the United States Arbitration Act ("the Arbitration Act") and the strong federal policy favoring arbitration. 103 S.Ct. at 941.

Whether a court should abstain in deference to a concurrent state court proceeding if a litigant seeks arbitration pursuant to the Arbitration Act is an issue recently adjudicated by the Supreme Court. In *Moses H. Cone, supra,* a hospital sued in state court for a declaratory judgment that a contractor had waived its right under the contract for arbitration and the hospital had satisfied its obligations to the contractor. Nineteen days later the contractor brought a diversity action in federal court to compel the hospital to arbitrate under the Arbitration Act. The District Court ordered the federal action stayed pending resolution of the state litigation since the federal and the state court had concurrent jurisdiction to enforce the Arbitration Act. On appeal, the Supreme Court applied the exceptional circumstances test and held that the District Court's stay was impermissible under *Colorado River.*

In interpreting the exceptional circumstances test the Supreme Court noted that the most important factor in *Colorado River* justifying dismissal was the avoidance or danger of piecemeal litigation. 103 S.Ct. at 937, 939. In addition, other factors in the case tending to support dismissal were the absence of any substantial progress in the federal court litigation, the presence in

the suit of extensive rights governed by state law and the geographical inconvenience of the federal forum. 103 S.Ct. at 937.

After discussing the relevancy of the *Colorado River* factors, the Court examined two other factors not raised in *Colorado River* which cautioned against the stay. One, it was thought significant that federal law, in the form of the Arbitration Act, would provide the rule of decision on the merits. 103 S.Ct. at 941. Two, the probable inadequacy of the state court to protect a litigant's right to arbitration under the Arbitration Act was an important reason against allowing a stay. 103 S.Ct. at 942.

The presence of a claim under the Arbitration Act was immediately recognized as a significant federal law claim even though jurisdiction is premised on diversity of citizenship. The Supreme Court noted that the Arbitration Act is an "... anomaly in the field of federal-court jurisdiction. It creates a body of *federal substantive law* establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal question jurisdiction under 28 U.S.C. § 1331" (emphasis supplied) 103 S.Ct. at 942 n. 32. Section two is a congressional declaration of a liberal federal policy favoring arbitration agreements and it creates a "body of federal substantive law of arbitrability." 103 S.Ct. at 941. Further, the presence of a claim under the Arbitration Act was a significant factor even though state and federal courts have concurrent jurisdiction to enforce the statute,[2] in that only the 'clearest of justifications' can suffice to justify the surrender of jurisdiction. 103 S.Ct. at 942. Accordingly, the Court thought the existence of the Arbitration Act, a federal-law issue, "must always be a major consideration weighing against surrender." 103 S.Ct. at 942.

---

2. In *Levy, supra,* the Court granted a stay with respect to the claim in which the federal and state courts had concurrent jurisdiction and denied the stay with respect to the claim in which the federal court had exclusive jurisdiction. *Levy,* however, was considered prior to the Supreme Court's recognition in *Moses H. Cone,*

*supra,* of the importance of a federal law issue *even if* the state and federal courts have concurrent jurisdiction. If *Levy* is read as distinguishing abstention on the basis of concurrent versus exclusive jurisdiction, it is probable that *Moses H. Cone* partially undermines *Levy.*

The second important factor raised in *Moses H. Cone* which counseled against the stay was the dubious adequacy of the state court to protect the contractor's right to arbitration under the Arbitration Act. Section three of the Arbitration Act requires state courts as much as federal courts to grant a stay of the litigation. 103 S.Ct. at 942. It is questionable, however, if the same is true of an order to compel arbitration under section four of the Arbitration Act. Although the Supreme Court declined to resolve that query it did express substantial doubt that a litigant could obtain from a state court an order compelling arbitration. 103 S.Ct. at 942. The presence of this substantial doubt cautioned against the granting of the stay.

Applying the *Moses H. Cone* method of analysis to the instant litigation the Court is of the opinion that this is not the rare case in which exceptional circumstances exist justifying a stay. The federal court litigation had substantially progressed prior to initiation of the Tennessee rehabilitation proceeding and the parties do not contend that the federal forum is inconvenient. Further, there is not present in this litigation extensive rights governed by state law. As previously discussed although there are various state interests in regulating the defunct insurance companies, the parties are not challenging in this litigation the regulatory responsibilities of Tennessee or North Carolina. Further, although this is a diversity action which normally is resolved under state law, the Arbitration Act, an anolomy in the federal court system, creates a body of federal substantive law governing arbitrability. The remaining factors, avoidance of piecemeal litigation, the presence of federal law and the probable inadequacy of the state court proceeding, which factors are probably the more important factors, counsel against the stay.

Federal law, in the form of the Arbitration Act, has a substantial impact on this litigation. Cherokee, Beacon, and Nola Re clearly contracted for arbitration and the arbitration agreements are subject to the Arbitration Act. As in *Moses H. Cone*, the presence of the federal law issue, even though the federal and state courts have concurrent jurisdiction to enforce the statute, is a major argument against granting a stay. Beacon, in addition claims that Cherokee and Beacon must arbitrate their differences. If Beacon, however, raises that claim in the Tennessee proceeding there is substantial doubt whether any state court, including the Tennessee Court, could compel arbitration. *See*, 103 S.Ct. at 942. Thus, as in *Moses H. Cone* the presence of this doubt weighs heavily against granting the stay.

The danger of piecemeal litigation, the factor of *primary* importance in *Colorado River*, cuts strongly against granting the stay. 103 S.Ct. at 937. Pretermitting the obvious issue of whether the Tennessee Court could obtain in personam jurisdiction over all the litigants and their claims in this action, the fact remains that Cherokee is not the only insurance company in this litigation subject to state rehabilitation proceedings. If the claims against Cherokee are stayed then the Court should seriously consider staying the claims against Beacon and/or UMIC. Further, the Uniform Insurers Liquidation Act (the "Act") does not require an exclusive single state proceeding. Rather the Act allows the initiation of separate claims in any state that has adopted the Act. N.C.G.S. §§ 58–155.5 to 155.14; *Central States v. Old Security Life Insurance Co.*, 600 F.2d 671, 677 (7th Cir.1979). Accordingly, if this litigation is stayed there will be numerous fragmented proceedings in various states, and no one proceeding could provide a full and complete adjudication of *all* the parties' rights. In addition, there is a substantial doubt whether a state court could compel arbitration, so not only will there be fragmentation among the state tribunals, but also there will be fragmentation between the federal and state proceedings. Accordingly, the most expeditious and cohesive resolution of the claims in this litigation is not to stay the proceeding, but is instead to proceed with arbitration, try the remaining issues in this central forum and then allow the parties to obtain satisfaction of their

judgments, if any, in the respective insurance rehabilitation proceedings.

In light of the above, the Court is of the opinion that Cherokee's motion to stay all claims against Cherokee should be denied.

## IV. CHEROKEE'S MOTION TO STAY THIS ORDER PENDING APPEAL AND TO CERTIFY THIS ORDER FOR INTERLOCUTORY APPEAL

■ During the hearing Cherokee moved the Court to stay the Order denying Cherokee's motion to stay the litigation and to certify the Order for interlocutory appeal. Cherokee primarily argued that a stay pending appeal should be granted to protect Cherokee from the costs of arbitration if the Order is reversed. As the Court has required Beacon to post a substantial bond, as it is Cherokee's motion which seeks to alter the status quo of this litigation pending appeal, as the stay would in effect give Cherokee the relief sought in their motion and as the stay would only serve to delay this litigation and the rights of the other litigants not subject to arbitration, the Court in its discretion is of the opinion that the motion should be denied.

Since Cherokee first raised a request for certification under 28 U.S.C. § 1292 during the hearing the Court will defer ruling on the request until Cherokee files its motion and memorandum and Beacon files its response within five days from service.

## V. THE PLAINTIFF'S MOTION TO STAY THE ORDER OF MAY 4, 1984 PENDING APPEAL

■ The Order of May 4, 1984 compelled Cherokee to submit to arbitration with Beacon and Nola Re and stayed the litigation pending arbitration. UMIC requests the Court to stay the Order, staying the litigation, pending appeal.

The Court, after carefully considering the matter, is of the opinion that UMIC's motion should be denied in that the May 4, 1984 Order only *temporarily* delays, in the interest of all the parties and the efficient management of this litigation, UMIC's right to proceed. The Arbitration Plan provides for a hearing no later than December 3, 1984 and an award no later than January 15, 1985. This mere delay will not subject UMIC to irreparable harm and thus the motion should be denied.

## VI. THE PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE ORDER OF JUNE 1, 1984, 588 F.SUPP. 740, DENYING THE PLAINTIFF'S MOTION FOR RECONSIDERATION

■ As the Court has previously discussed in its prior Orders the issue of whether the Plaintiff is entitled to a constructive trust the Court will not rehash that issue except to add that Cherokee's rehabilitation weighs against the imposition of a constructive trust as opposed to the creation of a constructive trust. The standard for imposing a constructive trust is not whether a party is solvent or insolvent. Similarly, it is not a device to obtain a prejudgment attachment or lien over other creditors. The Plaintiff has basically failed to show that in equity and good conscience it is entitled to a constructive trust, which would in effect give the Plaintiff priority over the numerous other creditors, policyholders, and insurance agents who must now assert the priority of their claims in the Tennessee proceeding. In addition, on July 17, 1984 the funds of Cherokee became subject to the exclusive jurisdiction of the Tennessee Court. Accordingly, the Tennessee Court, being the *first* court to acquire jurisdiction over the *res*, leaves this Court without authority to issue an order affecting the rights in that *res*. The Court is, therefore, of the opinion that the Plaintiff's motion should be denied.

## VII. BEACON'S MOTION FOR A CONSTRUCTIVE TRUST

The Court is of the opinion that Beacon's motion should be denied for the reasons stated with respect to the Plaintiff's motion for a constructive trust and for the further reason that Beacon has completely failed to show an equitable entitlement to the funds.

## VIII. MOTION OF BERCANUS TO STAY ITS OBLIGATION TO FILE ITS ANSWER

The Court is of the opinion that Bercanus' motion to stay its obligation to file an Answer should be denied for the same reasons that the other litigants were required to file their Answer.

**IT IS, THEREFORE, ORDERED** that:

(1) Beacon's motion to strike the affidavit of W. Donald Dresser is **DENIED**;

(2) Cherokee's motion for a stay of all claims against Cherokee is **DENIED**;

(3) Cherokee's motion to stay this Order pending appeal is **DENIED**;

(4) The Court will defer ruling on Cherokee's request to certify this Order for interlocutory appeal until Cherokee files its motion and memorandum and Beacon responds within five (5) days of service;

(5) The Plaintiff's motion to stay the Order of May 4, 1984 is **DENIED**;

(6) The Plaintiff's motion for reconsideration of the Order of June 1, 1984 is **DENIED**;

(7) Beacon's motion for a constructive trust is **DENIED**;

(8) The motion of Bercanus to stay its obligation to file its Answer is **DENIED,** and Bercanus is directed to file its Answer on or before September 15, 1984;

(9) Cherokee and Commissioner Neff, in his capacity as statutory receiver for Cherokee, and their attorneys, agents and representatives, are preliminarily enjoined during the pendency of this litigation from seeking an order in any other forum that would in any way interfere with this Court's Order of May 4, 1984 compelling Cherokee to arbitrate or with this Court's Order of March 2, 1984 directing that certain funds be held in the registry of this Court or with other proceedings before this Court;

(10) Cherokee and Commissioner Neff, in his capacity as statutory receiver for Cherokee, and their attorneys, agents, and representatives, are preliminarily enjoined during the pendency of this litigation from seeking the issuance of a contempt order against Beacon for proceeding with the arbitration and the other matters before this Court; and

(11) Beacon is required to post a $50,-000.00 bond as security pursuant to Fed.R.Civ.P. 65(c).