Trevor NEPTUNE and Terry Maynor, Plaintiffs,

v.

John H. McCARTHY, Jr., et al., Defendants.

Civ. A. No. 88–1292–WD.

United States District Court, D. Massachusetts.

Feb. 15, 1989.

Howard Friedman, Avery & Friedman, Boston, Mass., for plaintiffs.

Gerald A. Pugsley, Law Dept. City of Boston, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

WOODLOCK, District Judge.

This action was originally filed in the Massachusetts Superior Court. Plaintiffs allege that the individual defendants, members of the Boston Police Department, forcibly entered their apartment in the middle of the night without probable cause or other legal justification, and without showing them a search warrant. They charge violations by the individual defendants of two separate state civil rights statutes—the Massachusetts Privacy Act, Mass.Gen.L. ch. 214, § 1B (Count Two) and the Massachusetts Civil Rights Act, Mass.Gen.L. ch. 12, § 11I (Count Three)—as well as the Federal Civil Rights Act, 42 U.S.C. § 1983 (Count One). The plaintiffs have joined the City of Boston as a defendant, but allege only violations of state law, specifically the Massachusetts Tort Claims Act, Mass.Gen.L. ch. 258 (Count Four). The defendants removed the case in its entirety to federal court.

Plaintiffs have moved to remand all their state law claims to state court. As to Count Four, charging the City of Boston with violations of the Massachusetts Tort Claims Act, the grounds for remand are that this court should not exercise "pendent party" jurisdiction over the City of Boston. As to Counts Two and Three, charging the individual defendants with violations of the Massachusetts Privacy Act and the Massachusetts Civil Rights Act, the plaintiffs urge that I decline to exercise "pendent claim" jurisdiction over claims against the individuals.

Apparently in order to enhance, from the perspective of judicial economy, the attractiveness of remand of all these state claims while the federal claim against the individual officers remains in this court, plaintiffs moved, after hearing on their remand motion, to stay their federal claim while the state claims are litigated in state court. The defendants do not oppose such a stay.

For the reasons set forth below, I will remand Count Four, over which I find this court has no jurisdiction. I will also remand Counts Two and Three over which I find this court has only discretionary juris-

diction. Finally, I conclude that a stay of Count One would be an appropriate exercise of the power to abstain from conducting duplicative parallel litigation with the state court.

### A. Count Four: Pendent Party Jurisdiction

■ The motion to remand Count Four raises the question whether pendent jurisdiction extends over a *party* as to whom no independent basis of federal jurisdiction exists.

1. The leading Supreme Court case is *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1975), in which the plaintiff, who had been discharged from her job without a hearing, brought suit under 42 U.S.C. § 1983 against her employer, the county treasurer, as well as against the county and many of its officers. At the time *Aldinger* was decided, municipalities were not considered "persons" within the meaning of § 1983, and the federal claim against the county was dismissed on that basis.[1]

*Aldinger* held that the federal courts were without power to adjudicate disputes involving parties as to whom there was no independent federal basis for jurisdiction, despite the fact that the claims involved against the pendent party arose from a common nucleus of fact applicable to a dispute over which the court did have jurisdiction. Distinguishing between pendent claim and pendent party jurisdiction, the Court stated:

> From a purely factual point of view, it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite an-

other thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction, simply because his claim against the first defendant and his claim against the second defendant "derive from a common nucleus of operative fact." ... [T]he addition of a completely new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress.

*Id.* at 14–15, 96 S.Ct. at 2420.

In reaching its decision, the *Aldinger* Court looked closely at the language of the relevant statutes in an attempt to fathom congressional intent, for "[b]efore it can be concluded that [pendent] jurisdiction exists, a federal court must satisfy itself not only that Art[icle] III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence." *Id.* at 8, 96 S.Ct. at 2417. The Supreme Court held that Congress had not intended, through the statutes applicable in that case,[2] to grant such broad discretionary power to federal courts. *Id.* at 17, 96 S.Ct. at 2421.

2. *Aldinger* does not fully dispose of this case, however, because it did not deal with removal from state to federal court. Therefore, "we must ask whether the removal statute, 28 U.S.C. § 1441, provides a basis for jurisdiction which otherwise would be lacking." *Charles D. Bonanno Linen Service, Inc. v. McCarthy,* 708 F.2d 1, 8 (1st Cir.), *cert. denied,* 464 U.S. 936, 104 S.Ct. 346, 78 L.Ed.2d 312 (1983).

---

**1.** In *Monell v. Department of Social Service,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court overruled this aspect of *Aldinger,* deciding that municipalities could be sued under the Civil Rights Statute where the unlawful action is alleged to be part of a municipal policy or official decision. *Monell* did not affect the basic holding of *Aldinger,* however, that if there is no independent federal basis for jurisdiction over a party, a federal court should

not exercise "pendent party" jurisdiction over that party.

**2.** The relevant statutes in *Aldinger* were 42 U.S.C. § 1983, which at that stage was held not to cover municipalities or counties, and 28 U.S.C. § 1343(a)(3), which grants federal courts original jurisdiction over civil rights claims.

Plaintiffs in the instant case have not asserted a § 1983, or any other federal claim, against the City of Boston. The defendant City of Boston could thus not remove under either §§ 1441(a) or (b), which permit removal only of actions over which a federal court has original jurisdiction or "which plaintiff might have brought in federal court directly." 708 F.2d at 8. These provisions allow for pendent jurisdiction over connected state claims, but "provide[ ] no additional basis for jurisdiction" over the City of Boston. *Id.*

Section 1441(c) by contrast permits a federal court to exercise jurisdiction over " 'separate and independent' causes of action that it might not otherwise have statutory authority to hear." *Id.* at 8–9 (citing, *inter alia, American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951)).[3] But the Supreme Court has held that "where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." *American Fire & Casualty Co.*, 341 U.S. at 14, 71 S.Ct. at 540.

In the present case, the state tort claim against the City of Boston does not grow out of a separate and independent set of facts, and is not a separate and independent cause of action within the meaning of § 1441(c). Plaintiffs' state claim against the City falls into the "middle category of cases" which presents neither a federal claim, nor a separate and independent cause of action under § 1441(c). The First Circuit in *Bonanno* held that *Aldinger* had "close[d] the door" to pendent jurisdiction over such claims. *Bonanno*, 708 F.2d at 9–10. There being no basis in § 1441(c) for this court to exercise authority on the merits regarding the claim against the City of Boston, I find I am without jurisdiction to hear it.[4] Accordingly, I will remand Count Four.

### B. *Counts Two and Three: Pendent Claim Jurisdiction*

Counts Two and Three allege that the individual defendants, who are also charged in Count One with violations of 42 U.S.C. § 1983, violated plaintiffs' rights to privacy and civil rights under Massachusetts law. Plaintiffs' claims arise from the behavior of the individual defendants when they allegedly forcibly entered the plaintiffs' apartment in the middle of the night without a search warrant. These three claims "derive from a common nucleus of

---

**3.** The First Circuit in *Bonanno* traced the history of § 1441(c), observing that it had initially envisioned application only in diversity cases. Originally, where there was a "separable controversy" in a diversity case with both in-state and out-of-state defendants, the out-of-state defendant could remove its separable claims, and the in-state defendant could tag along. *Bonanno,* 708 F.2d at 9. The scope of removal was later narrowed for diversity cases by changing the phrase "separable controversy" to "separate and independent." *Id.* However, the diversity language was also omitted from these changes. "Thus, the only effect of § 1441(c) is sometimes to *expand* the scope of removal by allowing the 'separate and independent' state claim defendant to tag along. There is no indication that the revisers foresaw this result, ... and commentators have questioned its constitutionality." *Id.* at 10 (citations omitted) (emphasis in original).

**4.** *Cf. Christensen v. Phelan,* 607 F.Supp. 470 (D.Colo.1985). In *Christensen* the court styled its determination to remand as a matter of discretion. It held that while it had the power to hear pendent party claims in a case in which the plaintiffs had filed a § 1983 action against police officers and attempted to "tag on" state causes of action against the municipality for which the officers worked, it would decline to exercise jurisdiction over the municipality. The court held that "[p]endent jurisdiction should not be used as a tool to bring into federal court parties whom Congress sought to exclude." *Id.* at 472. I agree with that observation and conclude that if Congress did not seek affirmatively to include a party in a grant of jurisdiction—as *Bonanno* teaches with respect to removal jurisdiction—this court is without the power to hear claims against that party. I recognize, of course, that the jurisdiction of the federal courts over pendent parties in an action in which the core grant of jurisdiction is found in the existence of a controversy among other parties arising under federal law "calls for careful attention to the relevant statutory language." *Aldinger,* 427 U.S. at 17, 96 S.Ct. at 2421. That is the attention given removal jurisdiction in *Bonanno.* As will become clear below, however, even if I had the authority to exercise removal jurisdiction over a pendent party, I would be reluctant to do so here for reasons of discretion which apparently animated the *Christensen* court.

operative fact ... such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

28 U.S.C. § 1441(b) permits removal of "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States...." In asserting a § 1983 claim the complaint has set forth a federal claim on its face, and under *Gibbs*, parallel state and federal claims against the individual defendants should be tried together.

Pendent jurisdiction is discretionary with the court, however, and not a party's right. *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988) (citing *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139). In making the determination whether to exercise that discretion, a court need consider only two questions: "Does the complaint raise a genuine federal question?"—The answer here is clearly yes—and, "If so, is pendent jurisdiction over the [state] claims appropriate?" *Pueblo International, Inc. v. De Cardona*, 725 F.2d 823, 825 (1st Cir.1984). The answer to that question *in this case* is "No."

It is the obligation of a federal court "to consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity" in order to decide whether it is appropriate to exercise pendent claim jurisdiction. *Carnegie–Mellon*, 108 S.Ct. at 618. The doctrine of pendent jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Id.* at 619.

Because, as I have held in part A, *supra*, this court may not, under the mandate of *Aldinger* and *Bonanno*, exercise jurisdiction over the state claim set forth in Count

Four against the City of Boston, and because, under § 1441(b), this court must accept jurisdiction of the § 1983 claim set forth in Count One, there will be two proceedings regardless of whether I remand or retain Counts Two and Three.

However, it is likely that by returning the state claims to the state court the inefficiencies of piecemeal litigation can be minimized. I will take up the issue of piecemeal litigation—and its implications for issues of judicial economy—in part C, *infra*, where I discuss the plaintiffs' contingent motion for a stay.

Turning at this point to the questions of comity and fairness, I am persuaded that the special Massachusetts statutory regime for dealing with individual liberty claims against municipalities and their employees counsels in favor of remand of the pendent claims against the individual officers. Just as the Massachusetts Tort Claims Act presents issues uniquely within the state court's competence and interest, so also the Massachusetts Privacy Act and the Massachusetts Civil Rights Act, which respectively provide the grounds for relief as to Counts Two and Three, present special state law issues.

The fact, which plaintiffs candidly bring to this court's attention, that there are no reported cases interpreting the Massachusetts privacy statute in the context of a police misconduct claim, suggests that initial case law development for that claim is best undertaken in the state courts.[5] The applicability of the Massachusetts Civil Rights Act is not as unsettled in the context of police brutality cases. However, the uncomfortable experience of the federal courts in attempting to ascertain, anticipate, and accommodate the views of the state courts regarding the Massachusetts Civil Rights Act, *compare Redgrave v. Boston Symphony Orchestra, Inc.*, 855 F.2d 888, 912 (1st Cir.1988) (*en banc*) (concluding that a majority of the Massachusetts Supreme Judicial Court had declared

---

**5.** The Massachusetts Appeals Court has stated that an action for damages pursuant to Mass. Gen.L. ch. 214, § 1B may be available to redress an unlawful search and seizure. *City of Boston v. Ditson*, 4 Mass.App.Ct. 323, 330 & n. 8, 348

N.E.2d 116 (1976), *app. dismissed*, 429 U.S. 1057, 97 S.Ct. 779, 50 L.Ed.2d 773 (1977). The court neither analyzed nor interpreted the statute, however.

there should be no liability in *Redgrave* under the MCRA) *with Bally v. Northeastern University*, 403 Mass. 713, 719, 532 N.E.2d 49 (1988) (asserting that SJC had concluded MCRA had been violated in *Redgrave* ), suggests that claims requiring cutting edge development of state law are best resolved in the state courts in the first place, if there is a choice. *See Buethe v. Britt Airlines, Inc.*, 749 F.2d 1235, 1241 (7th Cir.1984); *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 458 (7th Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982); *Financial General Bankshares, Inc. v. Metzger*, 680 F.2d 768, 769 (D.C.Cir.1982); *Nottelson v. A.O. Smith Corp.*, 423 F.Supp. 1345, 1348 (E.D. Wisc.1976). Considerations of comity and fairness to the parties argue that such claims be resolved definitively through the state courts and not by a federal court acting as an uncertain surrogate.[6]

### C. Count One: Stay to Avoid Duplicative Litigation

■ Although the defendants have not opposed the stay of Count One requested by the plaintiffs if I remand Counts Two, Three, and Four, I am compelled to consider the matter independently in light of "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conser-* vation District v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) (citations omitted).

I treat the issue first from the perspective of judicial economy and convenience. A central concern is to minimize the burden of what necessarily must be two proceedings in two separate fora. I cannot appropriately consolidate all aspects of this case in a single court. The options before me are either to require that the parties conduct concurrent federal and state litigation, or to stay the federal claim, pending resolution of the state claims which I am remanding to state court.

In *Colorado River,* the Supreme Court in effect created a fourth doctrine of federal abstention,[7] rooted in "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246 (citation omitted). The Court set forth four factors to be weighed by district courts in determining whether to abstain. District courts should consider which court has jurisdiction over the res; the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the parties. *Id.* at 818, 96 S.Ct. at 1246.

Since *Colorado River,* the Supreme Court has recognized additional factors to

---

6. I recognize that prior to the emphasis by *Carnegie–Mellon,* 484 U.S. 343, 108 S.Ct. at 618–19 & n. 7, 98 L.Ed.2d 720 (1988), on considerations of comity, the First Circuit cautioned against "import[ing] 'abstention' considerations into the discretionary 'pendent jurisdiction' decision." *Pueblo International, Inc.*, 725 F.2d at 826. My reluctance to reach out to decide developing issues under the Massachusetts Civil Rights Act and the Massachusetts Privacy Act, however, derives not so much from the classic *Pullman* abstention considerations considered in *Pueblo, see generally* note 7, *infra,* but rather from the judgment that singular state issues will predominate in resolution of the claims brought under Counts Two and Three of the complaint.

7. Abstention from the exercise of federal jurisdiction had been recognized as permissible— and often required—in only three types of cases. *Pullman* abstention, from the case of *Railroad Commission of Texas v. Pullman Co.,* 312 U.S.

496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), was developed for cases presenting a federal constitutional question that may be rendered moot by a state court's determination of state law. *Burford* abstention, named for *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), while rarely exercised, is considered appropriate where the court is presented with difficult issues of state law bearing on policy problems of substantial public importance which transcend the importance of the individual case. In such a case, federal review would be disruptive of state efforts to establish a coherent state policy, and the federal court should abstain. The third type of abstention, called *Younger* abstention, after *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is deemed applicable only to cases in which federal jurisdiction has been invoked in order to enjoin certain types of ongoing state criminal proceedings. *See generally Colorado River,* 424 U.S. at 814–16, 96 S.Ct. at 1244–45.

be considered when evaluating whether a stay is appropriate. These are whether federal law would provide the rule of decision on the merits, and whether the state courts could adequately protect the plaintiffs' rights. *Moses Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 25–26, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983).

In *Colorado River*, the Court emphasized that "[n]o one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." 424 U.S. at 818–19, 96 S.Ct. at 1246–47. Indeed, "[t]here are sound reasons for our reiteration of the rule that a district court's decision to defer proceedings because of concurrent state litigation is generally committed to the discretion of that court." *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 665, 98 S.Ct. 2552, 2558, 57 L.Ed.2d 504 (1978).

However, while I have "wide latitude in setting [my] own calendar," *id.*, the circumstances in which I may abstain from exercising the weighty jurisdiction given me are limited, and "[o]nly the clearest of justifications will warrant [a stay]." *Colorado River*, 424 U.S. at 819, 96 S.Ct. at 1247. "Ordinarily, ... the simple existence of parallel state proceedings is *not* a reason to abstain." *Bath Memorial Hosp. v. Maine Health Care Fin. Comm'n*, 853 F.2d 1007, 1015 (1st Cir.1988) (emphasis in original). In fact the First Circuit very recently admonished district courts not to allow *Colorado River* abstention to "metamorphose into the rule." *Planned Parenthood League of Massachusetts v. Bellotti*, 868 F.2d 459, 467 (1st Cir. 1989).

In view of these reiterated cautionary instructions, it is my task to determine whether the instant case falls within the "exceptional circumstances" which would justify the suspension of federal jurisdiction. *See Moses H. Cone Hospital*, 460 U.S. at 19, 103 S.Ct. at 938; *Universal Marine Ins. Co. v. Beacon Ins. Co.*, 592 F.Supp. 948, 952 (W.D.N.C.1984).

I have carefully weighed the *Colorado River* and *Moses H. Cone* factors in the context of the instant litigation and conclude that a stay is appropriate to meet the exceptional circumstances which the law of stays of federal court proceedings duplicative of state proceedings has required. I share the apparent judgment of the plaintiffs that the state courts are likely to provide adequate protection of their rights. I do not dispute the view expressed by the Ninth Circuit that the "obligation [to exercise jurisdiction] is particularly weighty when those seeking a hearing in federal court are asserting ... their right to relief under 42 U.S.C. § 1983." *Tovar v. Billmeyer*, 609 F.2d 1291, 1293 (9th Cir.1980), *cert. denied*, 469 U.S. 872, 105 S.Ct. 223, 83 L.Ed.2d 152 (1984). The parties seeking § 1983 relief in this case have not sought vindication in the federal courts, however; they initially brought their federal claim in state court, and are now seeking to have its critical mass remanded to that forum. The state court was, therefore, the first forum in which jurisdiction was obtained by the parties, and it remains the forum in which plaintiffs wish to have their federal rights protected.

I am sensitive to the concerns expressed by commentators concerning reflexive resort to *Colorado River* abstention by the federal courts. *See generally* Committee on Federal Courts of the New York State Bar Ass'n, *Report on the Abstention Doctrine: The Consequences of Federal Court Deference to State Court Proceedings*, 122 F.R.D. 89 (1988); Mullenix, *A Branch Too Far: Pruning the Abstention Doctrine*, 75 Geo.L.J. 99 (1986). Given the lack of opposition from the party which sought to remove, however, and the affirmative request for a stay from the plaintiff, I see no prospect that the core concern of the commentators—frustration of or undue delay in the adjudication of federal claims—is present in this case. Rather, it appears obvious that a stay of the federal proceeding involving Count One, while the state court adjudicates Counts Two, Three, and Four, will result in less duplicative litigation activity and the likelihood of a more expeditious, more efficient, and less expen-

sive resolution of the entire controversy between the parties than would occur absent such a stay.

Moreover, the determination of the state privacy and civil rights claims—especially if provided through answers to special jury interrogatories, *see generally* Mass.R.Civ. P. 49—is likely to provide the basis for a preclusive decision with respect to the § 1983 claim. This assumption apparently is shared by the parties. If the plaintiffs prevail on their state claims against the defendants, that state judgment is likely to supply most if not all the necessary collateral estoppel predicate for a judgment on the federal claim set forth in Count One.[8] In this sense, the use of a stay would appear to be consistent with the development of the law of stays since *Colorado River.* As Professors Wright, Miller, and Cooper have noted, the likelihood that the state action will dispose of the federal action is a critical factor in determining the advisability of a stay. Thus courts after *Colorado River* have invoked the mechanism of the stay in cases in which "the controversy will be resolved in the state court proceeding, and ... if the party returns to federal court after the state court action is over, the most that will be needed is to dispose of the federal suit on principles of res judicata or collateral estoppel." 17A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4247, at 136 (2d ed. 1988) and cases cited therein.

By entering a stay of this proceeding, I will have done all that can be done—as a matter of economy, convenience, and fairness—to allow what are necessarily two separate proceedings to continue as nearly as possible under unified control in the state court without jeopardizing the plaintiffs' federal claim.

I shall, however, exercise my authority to govern pre-trial conduct by the parties as to Count One to require that all pre-trial matters in this case be subsumed by actions taken in the state proceedings with respect to Counts Two, Three, and Four. Thus all discovery which the parties anticipate to be relevant in the federal case must be taken in the state case.

The parties will have only modest pre-trial responsibilities in this court unique to this case. They must report to this court the resolution of the state case at the trial level, at which time this case will be set down for a final pre-trial conference here. Thus, the parties will not be required to duplicate any pre-trial activity as a result of the parallel proceedings.

## CONCLUSION

Accordingly, for the reasons set forth fully above, it is hereby ORDERED:

a) that plaintiffs' motion to remand Count Four is ALLOWED;

b) that plaintiffs' motion to remand Counts Two and Three is ALLOWED;

c) that plaintiffs' contingent motion for a stay of Count One is ALLOWED; and it is FURTHER ORDERED:

1) that all pre-trial discovery and joinder matters as to Count One shall be governed by rulings of the state court with respect to Counts Two, Three, and Four;

2) that the parties shall notify this court upon final judgment in the state trial court; and

3) that upon such final state court judgment, Count One shall be set down for a final pre-trial conference in this Court.

---

8. It is, of course, possible that a judgment against the plaintiffs in the state court will not dispose fully of the federal claim remaining in this court. The Massachusetts Civil Rights Act, for example, requires that the deprivation of civil rights be undertaken through threats and intimidation, an element not expressed in § 1983. *See* Mass.Gen.L. ch. 12, §§ 11H and

11I. Thus, while a violation of the Massachusetts Civil Rights Act or the Massachusetts Privacy Act by a defendant acting under color of state law may be a sufficient predicate for a § 1983 violation, a finding of no violation under the state acts would not necessarily be a sufficient condition to dismiss the § 1983 claim.